UNITED STATES FIDELITY & GUARANTY COMPANY, a corporation, Plaintiff,

v.

E. A. GRUNDEEN, doing business as Northwest Piano Company; Harry L. McFall; Gertrude Whalen, Herbert Whalen; and Andrew Summers, Defendants.

Civ. No. 3090.

United States District Court
D. North Dakota,
Northwestern Division.

Feb. 21, 1956.

Mart R. Vogel (of Wattam, Vogel, Vogel, Bright & Peterson), Fargo, N. D., and Richard H. McGee (of McGee & Van Sickle), Minot, N. D., for plaintiff.

Robert W. Palda (of Palda, Palda & Peterson), Minot, N. D., for defendant E. A. Grundeen, d/b/a Northwest Piano Co.

J. J. Funke, Minot, N. D., for defendant Harry L. McFall.

REGISTER, District Judge.

This is an action for a declaratory judgment. Jurisdiction is based upon diversity of citizenship; plaintiff is a foreign corporation, incorporated under the laws of the State of Maryland, and all named defendants are citizens and residents of the State of North Dakota.

As disclosed by the pleadings, plaintiff issued, on or about September 27, 1954, a policy of automobile liability insurance to the defendant E. A. Grundeen, doing business as Northwest Piano Company. The contract was effective during the period of September 27, 1954, to September 27, 1955. The terms of the policy were such that the plaintiff agreed to pay on behalf of the insured such sums which the insured should become legally obligated to pay as damages because of bodily injury, sickness, or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of a 1948 Dodge one-ton truck, serial number 4710–6921, motor number T 146–20656; and to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance, or use of the said 1948 Dodge truck, subject, however, to the limited liability as stated and contained in the declarations of the policy and on the terms, provisions and conditions of said policy of insurance.

Said policy of insurance contains the following provisions:

"Insuring Agreements.

"III. Definition of Insured—With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'Insured' includes the Named Insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automo-

bile is by the Named Insured or with his permission. * * *

"IV. Automobile Defined, * * *

"(a) Automobile. Except where stated to the contrary, the word 'automobile' means:

"(3) Temporary Substitute Automobile—under coverages A, B and C, an automobile not owned by the Named Insured while temporarily used as the substitute for the described automobile while withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; * * * ".

The Complaint alleges that on October 11, 1954, the defendant Harry L. McFall, while driving his own 1954 Oldsmobile automobile, was involved in an accident therein referred to. The other vehicle involved was a Ford automobile owned by the defendant Andrew Summers and in which he and defendants Gertrude and Herbert Whalen were riding. The accident resulted in injuries to each one of said Andrew Summers, Gertrude and Herbert Whalen, and thereafter suits were filed in the District Court of Ward County, North Dakota, by each of Gertrude Whalen and Herbert Whalen, respectively, as plaintiff, against E. A. Grundeen, doing business as Northwest Piano Company, and Harry L. McFall, defendants. In each of these actions it was alleged that Harry L. McFall was, at the time of the accident, driving his said Oldsmobile automobile with the knowledge and consent of his employer, E. A. Grundeen, doing business as Northwest Piano Company, and while on business of his said employer.

The plaintiff here alleges that, at the time of the accident, said Oldsmobile automobile was not used as a substitute automobile within the terms of said policy of insurance, and that the operation of said automobile, at such time, was without the permission, express or implied, of the named insured. The Complaint alleges that under the provisions of said insurance policy there is no obligation on plaintiff's part to defend the aforementioned suits on behalf of said E. A. Grundeen and Harry L. McFall, or to pay any judgment rendered against them, or either of them, in said pending actions. Plaintiff further alleges, in the Complaint, that a controversy has arisen between the parties as to their legal rights and duties under the policy of insurance, and prays for a declaratory judgment declaring that plaintiff is under no obligation or duty to appear and defend said suits, or assume any liability for the acts of Harry L. McFall and E. A. Grundeen at the time of the accident. Plaintiff further asks the Court to declare that at the time and place of the accident, the defendant McFall was not operating said Oldsmobile automobile with the consent and permission of the named insured; that, at the time of the accident, said Oldsmobile automobile was not temporarily used as a substitute; and that, at such time, the Dodge truck described in the policy was not withdrawn from normal use because of breakdown, repair, servicing, loss or destruction, and that the collision and accident were not covered by the policy issued by plaintiff.

In general, insofar as it affects the pending motion, the Answer of the defendant Grundeen alleged that the defendant McFall had permission to use the Dodge truck described in the insurance policy; that when McFall proceeded to start said Dodge truck in contemplation of a trip within the scope of his employment for the Northwest Piano Company he was unable to take it because of its breakdown, and substituted said Oldsmobile automobile therefor, within the scope of said policy. McFall likewise, in his Answer, alleges that at the time of the accident he was operating said Oldsmobile automobile as an employee and agent of said Grundeen, which automobile was then being used as a temporary substitute at a time when he had permission to operate the Dodge truck, which truck was then withdrawn from normal use by reason of a break-

down. The Answers of the other defendants assert the obligation of the plaintiff under the policy, and further assert that because of the acts and representations of the agents of the plaintiff it has waived any defense it had relative to the said policy, and that it is estopped to deny that such policy affords insurance protection to the defendants Grundeen and McFall as to claims arising out of the aforementioned accident. All of the answering defendants pray for a declaratory judgment that such policy fully covers, protects, and insures both of said Grundeen and McFall as to such claims, and that plaintiff be compelled to defend and pay all of such claims.

Various depositions were thereafter taken, including those of Grundeen, McFall, other employees of Grundeen, and one Lyle Nappen.

After the filing of the depositions plaintiff duly made its motion for summary judgment against the defendants declaring that no coverage was afforded under said policy of insurance with reference to said accident. The motion was made pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S. C.A., and was based upon the depositions, pleadings, files and proceedings herein on file with the Clerk.

The case is now before this Court on the motion for summary judgment, the same having been submitted on briefs pursuant to stipulation of the parties.

The undisputed facts appear as follows: During the times involved, E. A. Grundeen was in the music business, with stores in Minot and Williston, North Dakota. The business was operated under the name of Northwest Piano Company, with Grundeen as the sole owner; in the course of such business he sold band instruments. For many years, with the exception of a short period of time, Mr. Harry L. McFall was employed by Mr. Grundeen as a salesman. At the time here involved, he was employed as a full-time salesman. In the course of his employment McFall made trips to outlying towns to interview school superintendents, band directors, students and their parents for the purpose of displaying and selling band instruments. He had authority to operate and use, in the course of his employment, the Dodge truck described in the insurance policy, and he normally did use this truck on trips in the course of his employment. Grundeen had several other motor vehicles which were used in his business. In the spring of 1954 Grundeen had a new motor installed in said Dodge truck; in September, 1954, the truck had been repaired on two occasions; for some days prior to October 11th it had been in good running condition; prior to October 11, 1954, McFall had made an appointment with the band director of the public school at Esmond, North Dakota, a town approximately 125 miles south and east of Minot, to see him and talk with the parents of children about buying band instruments for their children. He had not specifically notified Grundeen of this appointment or of his intention to make this particular trip, but this was not necessary. About nine o'clock, a. m., on October 11, 1954, McFall drove, in his Oldsmobile coupe, to said place of business in Minot; he secured the assistance of another employee to "check out" certain band instruments and place them on the loading dock; McFall then placed these instruments in his said automobile for transfer to the Dodge truck, which was parked near the warehouse, its regular parking location; he took the key to the Dodge truck, drove to the warehouse (approximately one mile from the store), and transferred the instruments into the truck; he then attempted to start the truck. The starter worked, the motor turned over, fired spasmodically, but "popped" and backfired and McFall was unable to keep it running. There was a telephone in the warehouse, but McFall did not use it to notify Grundeen or any mechanic, or attempt to get help in starting the truck. A new carburetor had been installed in the truck in September, 1954, and this was the first difficulty McFall had had in starting the truck since

the installation of the new carburetor. McFall then replaced the band instruments in his own automobile, returned the truck ignition key to the store, and, at about ten o'clock, a. m., left Minot and proceeded on his way toward Esmond. He did not seek or secure permission to use his Oldsmobile automobile, or notify Grundeen of the difficulty he had had with the Dodge truck; Grundeen was not at his place of business that morning at any time prior to the departure of McFall. McFall made several stops enroute to Esmond, including a stop at Leeds, North Dakota (some 40 miles from Esmond), where he had several drinks of an alcoholic beverage, talked to various persons, made telephone calls, etc., and had a lunch. About six o'clock, p. m., McFall left Leeds and proceeded on his way to Esmond. On the way he became very sleepy, stopped his automobile, and slept. McFall has no recollection of anything that happened thereafter until the time of the accident, which accident occurred late that evening at a place some distance from Leeds. As a result of that accident the defendants Andrew Summers and Gertrude and Herbert Whalen were severely injured. The collision happened under circumstances establishing responsibility therefor upon the defendant McFall. Grundeen did not know of the use of the Oldsmobile automobile or of the accident until the evening of October 11th, and until then did not know McFall was not using the Dodge truck on that day. Grundeen had never, at any time, authorized McFall or any of his employees to use his or their personal automobile in the business. On all business for him, Grundeen furnished transportation for his employees; all expenses in connection with the operation of company vehicles were paid by Grundeen.

About midday on October 11th another employee of Grundeen, one Victor Maddock, went to the warehouse, attempted to start the Dodge truck, but was unable to do so. He had another employee pull the truck for a short distance before the motor started, then drove the truck to Smitty's Service Station where the proprietor (Lyle Nappen) removed and drained water from the sediment bowl under the fuel pump. The motor then operated in a normal manner. This operation took but a very few minutes, and was so minor that no bill was presented for the service. The truck has been used in the business, at Williston, since then and without need of further repair.

On March 3, 1955, plaintiff and the defendants Harry L. McFall and E. A. Grundeen entered into a "Non-Waiver Agreement", which provided in part as follows:

"1. First party authorizes the Company (USF&G) to proceed with the full handling of all claims and suits growing out of said accident. at its own cost as it sees fit;

"2. All of said acts shall be considered as done for the best interests of and without prejudice to, the rights of any party hereto;

"3. In any action or proceeding brought against the Company to enforce any liability under said insurance policy growing out of said accident, any and all acts of the company as to said accident, as to this agreement and as to the question of coverage shall not be construed as a waiver of any defense the company has, has had or may have under the provisions and conditions of the policy regardless as to time of knowledge or notice of any breach; and,

"4. None of such acts of the Company are to be construed as in any way creating an estoppel against the Company, nor in any way to be deemed as an admission of liability or coverage under said policy."

Such non-waiver agreement and the insurance policy involved are before the Court as exhibits.

Insofar as the pleadings are concerned, there are certain specific issues. They are as follows: (1) At the time of the accident was McFall included in the

definition of "Insured" within the meaning of the policy? The determination of this issue involves the interpretation of the policy and is a matter of law. (2) At the time of the accident was the Oldsmobile automobile operated by McFall a "temporary substitute automobile" as defined in the policy? (3) Has plaintiff waived any rights under the policy, or is it estopped from asserting such rights?

In view of the specific provisions of the non-waiver agreement, hereinbefore referred to, it appears as a matter of law that there is no such waiver and that no grounds exist upon which an estoppel can be based.

It clearly appears to this Court that McFall, at the time of the accident, did not come within the definition of "Insured" under Insuring Agreement III of the policy, for the reason that the actual use of his Oldsmobile automobile at that time was without Grundeen's permission. Stripped of nonessential words, the Court reads Insuring Agreement III, as it applies to the facts herein, as follows:

> "With respect to the insurance for bodily injury liability and for property damage liability, the unqualified word 'Insured' includes the Named Insured (Grundeen) and also includes any person (McFall) while using the automobile (Dodge truck, or automobile temporarily substituted therefor under the conditions specified in agreement IV. (a) (3)) and any person or organization legally responsible for the use thereof, *provided the actual use of the automobile is by the Named Insured (Grundeen) or with his permission. * * *"* (Emphasis supplied.)

The term "the automobile" means the vehicle specifically described in the policy (Dodge truck) or the vehicle temporarily substituted therefor (under the said specified conditions), but if either the vehicle described in the policy (Dodge truck) or such vehicle so temporarily substituted therefor is used by any person other than the named insured, such use must be with the latter's permission.

It is conceded by all parties that McFall's use of his own Oldsmobile automobile was not with the permission, either express or implied, of the named insured, Grundeen; as to this there is no issue of fact. Grundeen states specifically that he had no knowledge of the use by McFall of the latter's personal automobile; that he had not authorized such use, and had not consented thereto or permitted the same. McFall admits that there was absolutely no authorization or permission on the part of Grundeen for such use. Indeed, defendants, in their brief, assert: "Defendant McFall at no time pretends that he was using his personal automobile with the permission of Grundeen. It is his position, however, that this permission is not required. It is Grundeen's permission to use the Dodge Vanette that McFall had to have in order to be protected by the insurance policy, and he was so protected when he was driving 'the automobile'." Coverage, however, is not afforded simply on the basis that permission was granted to take and use the Dodge truck. Insuring Agreement III provided that the "actual use" of "the automobile" was required to be by the Named Insured, or with his permission. If the vehicle other than the one described in the policy, by reason of being a "temporary substitute" therefor, became "the automobile", its actual use by McFall was required to be with the permission of Grundeen to the same extent and with like effect as such permission was required for the use by McFall of the Dodge truck. Defendants concede, in effect, that if there be coverage of the Dodge truck when operated by one other than the Named Insured, the latter's permission is required by the terms of the policy. Certainly it would not be unreasonable that there be a similar requirement of permission as to any vehicle used as a substitute for the Dodge truck. Such an interpretation seems to this Court to be the proper and reasonable interpretation of the wording of said Insuring Agreement III.

There remains the question as to whether at the time of the accident the Oldsmobile automobile was temporarily used as a substitute for the Dodge truck while the latter vehicle was withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction, within the requirement of Agreement IV. (a) (3). Both parties have devoted substantial portions of their briefs to a discussion as to whether the slight "operation" required to put the truck back in normal operating condition constituted a "breakdown" within the meaning of the policy.

Defendants contend that this is an issue of fact; plaintiff's position is that the facts, as testified to, are undisputed and accepted as being correct, but that the issue concerns the legal conclusions to be drawn from such undisputed facts as they are applied to the policy, which issue is a matter of law. There is no conflict in the evidence, and the Court is constrained to the plaintiff's view. It has been exceedingly difficult to find authoritative interpretation of policy provisions which would be helpful herein. However, see Tanner v. Penn. Threshermen & Farmers' Mutual Casualty Insurance Company, 6 Cir., 226 F.2d 498.

It appears that the determination of this matter is immaterial in view of the interpretation of Insuring Agreement III, for, even if it be concluded that the Oldsmobile automobile was, at the time of the accident, a "temporary substitute automobile" within the meaning of the policy, there was no coverage thereof and there could be no liability under the policy, as a matter of law, due to the absence of permission by Grundeen for its use.

This motion for summary judgment has been raised under Rule 56(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. Subparagraph (c) of this rule provides that "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law", then a summary judgment may be entered.

"It is now well settled that summary judgment may be entered for either party if the pleadings, depositions, admissions on file and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.", and, "Upon a motion for a summary judgment it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried." Toebelman, (Hahn, Intervenor) v. Missouri-Kansas Pipe Line Co., 3 Cir., 130 F.2d 1016, 1018.

"According to Rule 12(b) and its associated Rule 56, summary judgment may be rendered only if there are no genuine issues of fact to be resolved. The judgment is authorized only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, and that no genuine issue remains for trial." Butcher v. United Electric Coal Co., 7 Cir., 174 F.2d 1003, 1006. Also see; Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967; Harris Stanley Coal & Land Co. v. Chesapeake & Ohio Ry. Co., 6 Cir., 154 F.2d 450; and Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101.

For the reasons stated it is the opinion of this Court that there is no genuine issue of fact to be tried, that plaintiff is entitled to judgment as a matter of law, and that the motion for summary judgment should be granted. Appropriate Findings of Fact, Conclusions of Law, Order for Judgment, and Judgment will be prepared and submitted by counsel for plaintiff in accordance herewith.

It will be so ordered.