The CHARLES STORES, INC.,
Plaintiff-Appellant,

v.

AETNA INSURANCE COMPANY,
Defendant-Appellee.

The CHARLES STORES, INC.,
Plaintiff-Appellant,

v.

HARTFORD FIRE INSURANCE COMPANY, Defendant-Appellee.

No. 28125.

United States Court of Appeals,
Fifth Circuit.

July 1, 1970.

Joseph S. Mead, Mead, Norman & Fitzpatrick, Birmingham, Ala., for plaintiff-appellant.

Thomas H. Watkins, Watkins & Eager, Jackson, Miss., Fred C. DeLong, Jr., Campbell, DeLong, Keady & Robertson, Greenville, Miss., for defendants-appellees.

Before JONES, BELL and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

In these consolidated removed cases appellant Charles Stores, Inc., having suffered a fire loss, sued to recover on two insurance policies, one issued by Hartford Fire and the other by Aetna Insurance Company. The jury rendered a general verdict for the defendants. We reverse and remand for a new trial because of error relating to the issue of whether the insurers had waived policy defenses.

The policies were special multi-peril policies covering real and personal property in three Charles Stores in three Mississippi cities. Also they contained coverages for liability, medical payments, employee dishonesty and other crimes, and motor vehicle coverage, at all three store locations. Each provided for a retroactive premium adjustment plan under which provisional premiums were paid and the actual premium calculated upon expiration or cancellation on the basis of information furnished by the insured, with a refund of premium or payment of additional premium as appropriate.

On November 18, 1964 a fire occurred in appellant's Greenwood, Mississippi, store resulting in extensive damage. The source of the fire appears to have been an incendiary device, which the insurers claim was placed there by Virgil Thompson, a vice president and director of Charles Stores, Inc. Six days after the fire appellant and the insurers entered into a non-waiver agreement the pertinent terms of which are set out in our discussion below.

The insurers asserted numerous policy defenses. The District Court submitted to the jury only these: (1) fraud and false swearing in connection with proof of loss; (2) suspension of coverage from increase of hazard; (3) suspension of coverage for failure to maintain protective safeguards, consisting of the sprinkler and alarm systems.

Both policies were for a term expiring June 5, 1967. To support its claim that the policy defenses had been waived appellant offered evidence that, with knowledge by the insurers of the policy defenses, the policies had been continued in force and then cancelled. As to Aetna, Charles Stores offered evidence that seven days after the fire it paid to Aetna a premium of $572, and that, by a

notice dated February 2, 1965, Aetna cancelled its policy effective February 13, 1965 and in connection therewith retained the premiums earned to February 13 and returned as unearned the excess previously paid. The notice stated no reason for cancellation. As to Hartford, appellant offered evidence that, by letter dated November 3, 1965, it had cancelled its policy effective December 1, 1965, for the stated reason that it had reviewed the risk, reunderwritten the account, and under its present underwriting program did not desire to continue the coverage, and that in January, 1966, Hartford sent a bill for additional premium due of $1274.00, as recalculated on a pro rata cancellation basis, which appellant paid. The court sustained objections to all of this evidence.

■ There is no merit to the contention of appellant that it was entitled to a directed verdict on each of the above three policy defenses. The facts and circumstances do not "point so strongly and overwhelmingly in favor of one party * * * that reasonable men could not arrive at a contrary verdict." Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969).

1. The fraud and false swearing defense.

■ There was evidence that in marking down from retail to wholesale the value of inventory on hand at the time of fire appellant used the factor of 25% as the markup to be deleted, but that before the fire it customarily had used 30% or 33⅓% as a fair markup, and that the use of the 25% factor increased appellant's claim by approximately $25,000. There was other testimony by which appellant attempted to explain the difference in the markup factors. Also there was evidence that some items on hand after the fire had been counted twice at the instigation of Thompson, thereby inflating the amount of the loss; evidence as to the value of the twice-counted items; and evidence that appellant's president learned of the double count and promptly notified a

representative of the insurers of what had occurred. Obviously there is a related issue of whether, if Thompson instigated a double count, the appellant is bound by his acts.

All of this makes clear that, under *Boeing* standards, whether appellant wilfully and falsely overstated its claim in a material respect, by either or both of the foregoing means, was for the jury. See Transportation Insurance Company v. Hamilton, 316 F.2d 294, 297 (10th Cir. 1963); 5A Appleman—Insurance Law and Practice, § 3589 at 615 (1970). The contention of appellant to the contrary is frivolous, or close to it.

2. The protective safeguards defense.

■ The policy provided that coverage was suspended for any period in which the insured failed to "maintain so far as is within his control such protective safeguards * * * for which credit in rate has been granted." Credit had been given for an automatic sprinkler system and a fire alarm. There was evidence that both were turned off at the time of the fire. There was evidence, which we need not restate in detail, that four or five days before the fire appellant's president knew that the sprinkler and fire alarm were off, that the condition was reported to the owner of the building, and that a workman was sent to make repairs. Also there was evidence that a sprinkler head was damaged two days before the fire and the sprinkler system and alarm were then discovered by the fire department to be off, and that the sprinkler system then was turned on. All these facts made a classic issue for jury determination of whether the systems were in working order and if not whether with the knowledge or by the control of appellant. As with the double-counting issue, there runs through these events the thread of alleged participation by Thompson and the question of the extent, if any, to which the corporation is bound by his acts. See Firemen's Mutual Ins. Co. v. Aponaug Mfg. Co., 149 F.2d 359 (5th Cir. 1945).

3. The increase in hazards defense.

The insurers urge as evidence of increase in hazard "by any means within the control or knowledge of the insured" the alleged inoperative condition of the sprinkler and fire alarm systems and the fact that at the time of the fire there was present an incendiary device.[1]

■ Failure to maintain the sprinkler system is an increase in hazard, and, for reasons already stated, the evidence concerning the sprinkler and alarm systems was for the jury. Liverpool & London & Globe Ins. Co. v. Nebraska Storage Warehouses, 96 F.2d 30 (8th Cir. 1938).

■ Whether the incendiary device was in place by either control or knowledge of appellant depends upon who knew of it and whether he was acting with the authorization, knowledge or ratification of the corporation. Orient Insurance Co. v. Parkhill, 170 F.2d 510 (5th Cir. 1948); Firemen's Mutual Ins. Co. v. Aponaug Mfg. Co., *supra*. If an individual, not in control of the corporate affairs, wilfully set fire to the premises without the *complicity* of the corporation the insurance would remain valid. The same considerations apply to the issue of whether there could be imputed to the corporation knowledge by a corporate officer of the presence of an incendiary device so as to cause the loss of coverage from that increase in hazard.

4. Waiver of policy defenses.

■ The District Court erred in excluding appellant's evidence of waiver by the insurers of policy defenses.

Fraud and false swearing, either before or after the loss, would render the policy void. The appellee does not seriously contend that this condition of forfeiture of coverage may not be the subject of waiver. The only basis for keeping from the jury evidence of waiver of this defense was the non-waiver agreement, which we discuss below.

The increase in hazard clause provides:

*Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured; or (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days;*
\* \* \*

Appellees contend that a defense based thereon may not be waived because the clause is a condition on the existence of coverage and not a condition permitting forfeiture of the policy. In Travelers Fire Ins. Co. v. Bank of New Albany, 244 Miss. 788, 146 So.2d 351 (1962), a case involving sub-paragraph (b) of precisely the same clause, the Mississippi Supreme Court held:

The fact that coverage was suspended sixty days after the renewals were issued does not abrogate application of the doctrine of waiver. The factual and equitable basis for its exists whether the procedure is called suspension or forfeiture.

146 So.2d at 354. The court rejected the argument, made by the insurers in this case, that waiver and estoppel are inapplicable. The forfeiture-suspension distinction, rejected in *Travelers Fire*, has even less viability in the context of this case, because of the possibility that

---

1. The parties have joined issue in their briefs over whether it may be proved under the increase in hazard clause that appellant was in deteriorating financial condition and that there was a shortage of inventory in the Greenwood store. These two items of evidence got into the case as probative of a policy defense that was not allowed to go to the jury.

We are unable to ascertain that they were submitted to the jury as tending to show increase in hazard, and the court appears to have restricted its charge on increase in hazard to changes in the condition of the premises. We decline to rule on this abstract question which we assume will not arise at another trial.

an increase in hazard at Greenwood arguably might "spill over" so as to suspend coverage on the other two stores and cause a subsequent loss at one of the other locations to be not covered. It has been held that the insurer may assert the increase in hazard defense even though the loss was not occasioned by the increase in hazard. *E. g.*, 5 Appleman—Insurance Law and Practice, § 2941 at 4.

██ Under the protective safeguard provision, failure of appellant to maintain the sprinkler and fire alarm systems at Greenwood would suspend coverage for that location for the time of the discontinuance. *Travelers Fire, supra,* compels us to reject the contention that this defense cannot be the subject of waiver.

██ On the issue of waiver of the policy defense the jury was entitled to consider when the insurers came to have knowledge of the existence of policy defenses and whether, with knowledge, they continued to treat the policies as in effect and for how long, 18 Couch, Insurance 2d (Anderson ed.) § 71:24 (1968); 16A Appleman—Insurance Law and Practice, § 9361 at 807, or demanded, accepted and retained premiums, Mechanics' and Traders' Ins. Co. v. Smith, 79 Miss. 142, 30 So. 362 (1901).[2]

██ The non-waiver agreement, signed by the parties on November 24, did not remove from jury consideration the issue of whether the policy defenses had been waived, because the scope of the agreement was not that broad and because a non-waiver agreement itself may be waived. This agreement said that the rights of the insurers were not waived by "any action taken by the insurance company, or companies, * * * in ascertaining the amount of the actual cash value; and the amount of the loss and damage * * * and in investigating the cause thereof." It also said:

THE SOLE OBJECT AND INTENT of this agreement is to provide for the determination of the amount of the actual cash value and the amount of the loss and damage, and an investigation of the cause thereof, without regard to the liability of said insurance companies, and to preserve all the rights of the insurance company, or companies, and the insured.

██ A non-waiver agreement is no different from any other agreement. The parties are bound by what it plainly says, and if ambiguous it is construed under established principles of construction. This agreement was to allow the insurers to investigate to determine cause and amount of loss, and it otherwise preserved the rights of all the parties. It is not a free ticket to the insurance company under which it may do as it wishes in its other relations with the insured, free of responsibility for its actions.

The mere obtaining of a nonwaiver agreement does not give the insurer a right to do anything it may wish to prejudice the rights of the insured and thereafter continue to rely on the nonwaiver agreement, since such agreement may be waived by the insurer's subsequent conduct * * * [a]nd the fact that such agreement recited that the insurer's investigation should not waive or invalidate any conditions of a fire policy was not a waiver of subsequent acts of the insurer or its agent * * *.

16A Appleman—Insurance Law and Practice, § 9377 at 880–881. Sheeren v. Gulf Ins. Co. of Dallas, Texas, 174 So. 380 (La.Ct.App.1937); Connecticut Fire Ins. Co. v. Fox, 361 F.2d 1 (10th Cir. 1966); Bankers Fire & Marine Ins. Co. v. Draper, 242 Ala. 601, 7 So.2d 299 (1942);

2. Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co., 416 S.W.2d 396 (Tex.1967) is a retrospective premium policy case. It held there could be no waiver by charging and collecting adjusted premiums after loss. But a nonwaiver agreement had been signed, broader than the one in the case now before us, which had the effect of holding open the calculations of premium.

**994**

Tedder v. Home Ins. Co., 212 Ala. 624, 103 So. 674 (1925).

■ A non-waiver agreement is not to be extended by construction beyond its terms, and does not prevent an estoppel arising against the insurer by conduct after investigation, Pennsylvania Fire Ins. Co. v. Hughes, 108 F. 497 (5th Cir. 1901). In Davis v. Aetna Ins. Co., 16 Tenn.App. 523, 65 S.W.2d 235 (1932), a non-waiver agreement almost identical to the one here in question was held to not permit the insurer to raise a defense of failure of proper proof of loss, when the acts of the insurer's agents were such as to estop it from asserting that such proof was lacking.

In Liverpool & London & Globe Ins. Co. v. Nebraska Storage Warehouses, *supra*, relied on by appellees, the court reversed for an error in charging the jury that immediately after the fire the insurers were required to elect whether to rely on breach of the sprinkler clauses as a defense. The court held that the defense had not been waived by negotiations respecting the extent of loss, because the parties had signed a non-waiver agreement covering "ascertaining the amount of loss and damage." In Anderson v. American and Foreign Ins. Co., 227 Miss. 324, 86 So.2d 303 (1956), after the insurers initially denied liability, the insured signed a non-waiver agreement authorizing continuance of the insurer's investigation. Subsequently he frustrated the investigation by refusing to answer questions. The trial court affirmed the submission to the jury of the issue of whether, considering the prior denial and the reservation of rights in the non-waiver agreement, the insured was required to submit to questioning. That conclusion is wholly consistent with the result we reach.

The insured in Atlas Assurance Co. v. Standard Brick and Tile Corp., 264 F.2d 440 (7th Cir. 1959), had two fires five months apart. The insurers defended on failure to comply with the watchman clause. The insured claimed the defense had been waived as to the second fire, because the insurers, in investigating the first, had learned there was no watchman service at the closed-down plant. The court held the contention without merit because the parties had signed a non-waiver agreement permitting the investigation. The court disposed of the matter in one sentence, without written analysis or reference to authorities, and we decline to follow the decision. United States Fidelity and Guaranty Co. v. Grundeen, 138 F.Supp. 498 (D.N.D.), aff'd 238 F.2d 750 (8th Cir. 1956) and Massachusetts Bonding and Ins. Co. v. Orkin Exterminating Co., 416 S.W.2d 396 (Tex.1967), contain non-waiver agreements much broader in scope than the one here involved.

5.

The contention of appellant that the court erred in failing to give requested instructions 16 and 17 has no merit. The other points raised by appellant should not arise at another trial, so require no comment.

Reversed and remanded for further proceedings not inconsistent with this opinion.