**OWL & TURTLE, INC., a Florida Corporation, Plaintiff-Appellant,**

v.

**The TRAVELERS INDEMNITY COMPANY, a Foreign Corporation, Defendant-Appellee.**

**No. 75–3460.**

United States Court of Appeals, Fifth Circuit.

June 17, 1977.
Rehearing Denied July 11, 1977.

Louis K. Rosenbloum, Fredric G. Levin, Pensacola, Fla., for plaintiff-appellant.

Gary B. Lane, Pensacola, Fla., for defendant-appellee.

Before BROWN, Chief Judge, and COLEMAN and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

I

In July of 1974, a Pensacola, Florida, nightclub called "Robbie's Yum Yum Tree" was destroyed by arson. Owl & Turtle, Inc., which owned the Yum Yum Tree, sought indemnification under a fire insurance policy for the loss from the defendant, Travelers Indemnity Co. (Travelers). Al-

1. *See* 28 U.S.C. § 1332 (1970).

2. Record at 25.

3. Owl & Turtle, Inc., alleges that the evidence presented at trial was not sufficient to survive a directed verdict on the issue of whether the

though admitting liability under the policy for arson, Travelers refused payment because of its belief that Robert Llewellyn, the son of the sole shareholder of the plaintiff corporation, had procured the conflagration.

Invoking the diversity jurisdiction of the district court,[1] Owl & Turtle, Inc., sued Travelers on its policy. Travelers in its answer raised the defense that the loss sustained by the plaintiff "resulted from a fire willfully kindled by or under the direction of the plaintiff with the intent to defraud the defendant."[2] Travelers admitted that Llewellyn's mother, Elizabeth Deboard, had had no part in the arson, but it sought at the subsequent jury trial to demonstrate that he had commissioned another to set the torch to the club.[3] In addition, the indemnity company presented evidence in an attempt to prove that Llewellyn, although not a legal owner of the Yum Yum Tree, was actually the dominant force directing the club's business activities. Thus, Travelers argued, his actions should be attributed to the plaintiff and recovery denied. The case was submitted to the jury after the directed verdict motion of the plaintiff was denied, and a verdict was returned in favor of the defendant.

II

As a general rule, a federal district court sitting in a diversity case has the obligation to apply the law of the forum state.[4] This case has as its central issue a question of Florida law, namely, whether an act of arson can be imputed to the corporation and prevent its recovery under a fire insurance policy where the arson was procured without the company's knowledge or consent by the general manager of the destroyed property. The district court thought so, and instructed the jury as follows:

fire was set by Llewellyn. Due to our disposition of this appeal, we do not reach this issue.

4. *Erie R. R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

If the greater weight of the evidence supports defendant's claim that the fire or fires of July, 1974, were caused by act, design or procurement of Robert Llewellyn, then you must determine the second issue; that is, whether the plaintiff is liable for such act, design or procurement on the part of Robert Llewellyn. If the greater weight of the evidence supports the defendant's claim that the fire or fires of July, 1974, were caused by act, design or procurement of Robert Llewellyn, and also supports defendant's claim that Robert Llewellyn was at such time authorized or permitted by the party or parties in interest in the corporation to act as the corporation and as its dominant force in the primary sense of formulating its policies for it and directing its conduct, as was the duty generally of its directors, and that he set or caused to be set the fire or fires for the purpose of advantaging the plaintiff, then the plaintiff is liable for such act, design or procurement on his part and your verdict should be for the defendant. If the greater weight of the evidence does not support both such claims of defendant, your verdict should be for the plaintiff.[5]

Normally a question of such centrality would be a likely candidate for certification to the Florida Supreme Court since our research and that of the parties has uncovered no decision by that tribunal directly on point.[6] In this case, however, we are convinced that the law of this country is so clear on this point that we can confidently anticipate our Florida brothers' state of mind on the subject. Hence, in the interest of judicial economy, we will be so bold as to dabble in some elementary divination.

█ It is settled law taken as given by both parties that "[p]rinciples of public policy deny the right of recovery to an insured who fraudulently sets on fire the property covered by the contract of insurance."[7] The derivative question in this case is whether Llewellyn acted as the insured. Under the charge given to the jury, the procurement of arson by Llewellyn could be attributed to Owl and Turtle, Inc., if the jury found (1) that Llewellyn was authorized or permitted to make management decisions regarding the club, and (2) that he had the fire set for the purpose of advantaging the corporation.

This charge was an improper statement of the law. The charge had the jury focus on the mental attitude of Llewellyn, even though he had no legal interest in the corporation or its insurance policy. The analysis should have been directed instead to the question of whether the corporation or its shareholder had consented to the incendiarism. Evidence pro and con was presented at the trial concerning the activities of Llewellyn around the club and whether those actions made him a "dominant" or "controlling" force in its operations.[8] No evidence was presented, however, of any fraudulent intent on the part of Deboard, the sole owner of the corporation, and Travelers here on appeal concedes that she did not in any way procure, consent to, or ratify the arson.

The issue, as previously stated boils down to whether the criminal act of the manager of a corporation's business enterprise who is allowed to make executive decisions is to be attributed to the corporation despite its lack of knowledge or consent. The answer is clearly in the negative. As elucidated in Couch's treatise on insurance,

Since the acts, even though evincing fraud or design, must be connected with the insured, it is not sufficient that they are the wilful and fraudulent acts of his servants or agents, if the insured is neither expressly nor impliedly a party

---

5. Record at 945–46.

6. Fla.App. R. 4.61 prescribes the certification procedures.

7. 18 R. Anderson, Couch on Insurance § 74:660 (2d ed. 1968).

8. Due to our disposition of this appeal, we expressly decline to reach the issue of whether evidence was improperly admitted over objection concerning this facet of the case.

thereto, and the acts have been done without his procurement, privity, or assent.[9]

The same principle was echoed in *Charles Stores, Inc. v. Aetna Insurance Co.*, 428 F.2d 989, 992 (5th Cir. 1970): "If an individual, not in control of the corporate affairs, wilfully set fire to the premises without the complicity of the corporation the insurance would remain valid."[10] That rule of law controls this case.

Travelers attempts to rely on the line of cases exemplified by *Kimball Ice Co. v. Hartford*, 18 F.2d 563 (4th Cir. 1927). In *Kimball* an officer and general manager of a business fraudulently set fire to corporate property in order that the corporation could collect under its fire insurance policy. The court allowed his action to be imputed to the corporation in that case because of the cumulation of several facts: he himself took out the policy in the name of the company without knowledge of the other officers; he owned one fourth of the capital stock of the company; he had exclusive control and management of the property; and, significantly, he was a large creditor of the company which was wholly insolvent.[11] None of the foregoing factors are present in this case.

Instead, this case is much more analogous to *Merchants Insurance Co. v. Lilgeomont*, 84 F.2d 685 (5th Cir. 1936). In that case there was evidence presented to the effect that the arson of business property had been procured by the husband of the sole stockholder of the corporate owner of the property. Even accepting the husband's unlawful act as established, the court held for the insured because there had been no proof of his wife's involvement in the arson.[12] Similarly, in the instant case there was no evidence advanced to prove Deboard's complicity in the incendiarism of the Yum Yum Tree.

### III

In sum, we conclude that the trial judge improperly charged the jury on the law of the case. If the correct law had been applied by the district court, the evidence adduced at trial would not have been deemed sufficient to attribute Llewellyn's act to the insured. The motion for a directed verdict in favor of the insured was therefore improperly denied.[13] This cause is hereby reversed for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

9. *Id.* § 74:699 (footnote omitted). The text goes on to relate,

> The fact that the insured's husband, who acted as her business agent, set fire to the insured property, does not relieve the insurer of liability if such act was done without her knowledge, since a principal cannot be held liable for the crime of his or her agent. Likewise the appointment of insured's son as insured's agent for certain specific purposes in reference to the property does not require the imputation to the insured of an unlawful incendiary act of the son. (Footnotes omitted.)

For a remarkably similar fact situation to the present case, note *Glens Falls Ins. Co. v. Sherritt*, 95 F.2d 823 (4th Cir. 1938).

10. *Accord, Orient Ins. Co. v. Parkhill*, 170 F.2d 510 (5th Cir. 1948); *Firemen's Mut. Ins. Co. v. Aponaug Mfg. Co.*, 149 F.2d 359 (5th Cir. 1945); *Feibelman v. Manchester Fire Ass. Co.*, 108 Ala. 180, 19 So. 540 (1896).

11. For cases of similar import as *Kimball, see Fidelity-Phenix Fire Ins. Co. v. Queen City Bus*

*& Transfer Co.*, 3 F.2d 784 (4th Cir. 1925); *Meily Co. v. London & L. Fire Ins. Co.*, 142 F. 873 (C.C.E.D.Pa.), *aff'd*, 148 F. 683 (3d Cir. 1906); and cases cited in R. Anderson, *supra* note 7, at § 74:670. The general rule must still be kept in mind, however, as it controls this case:

> As a general rule, the wilful burning of property by a stockholder in a corporation is not a defense against the collection of the insurance by the corporation; nor can the corporation be prevented from collecting the insurance because its agents wilfully set fire to the property, if done without the participation or authority of the corporation, or all its stockholders. *Id.* (footnote omitted).

12. Compare *Lilgeomont* with *Nat'l Ben Franklin Fire Ins. Co. v. Stuckey*, 79 F.2d 631 (5th Cir. 1935) (evidence of collusion of insured offered at trial).

13. *See generally Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc).