**VICKSBURG FURNITURE MFG., LTD.,**
**a Mississippi Corporation,**
**Plaintiff-Appellant,**

v.

**The AETNA CASUALTY AND SURETY COMPANY, a Connecticut Corporation, and Merchants National Bank, Defendants-Appellees.**

**No. 79–3826**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.
Unit A

Sept. 15, 1980.

Rehearing Denied Oct. 28, 1980.

Satterfield, Allred & Colbert, Michael S. Allred, Thomas L. Kirkland, Jr., Jackson, Miss., for plaintiff-appellant.

Watkins & Eager, James L. Carroll, Paul H. Stephenson, III, Jackson, Miss., for Aetna Casualty and Surety Co.

Before BROWN, POLITZ and TATE, Circuit Judges.

TATE, Circuit Judge:

The present diversity action, which was removed to federal court, arose out of a fire insurer's refusal to pay for a fire loss. The plaintiff corporation (Vicksburg) was the owner of a furniture factory that was destroyed by fire on July 15, 1977. Vicksburg appeals from a final judgment dismissing its suit to recover for the loss from its fire insurer (Aetna). The dismissal was based on a general jury verdict in favor of the defendant insurer. Under the instructions and evidence, the general jury verdict upheld Aetna's refusal to pay as based upon either or both of the reasons relied upon by it: (1) it claimed the policy coverage did not apply at the time of the fire because plaintiff, through its failure to comply with certain provisions of the policy requiring maintenance of a sprinkler system, had created an increase in the insured hazard; and (2) it contended that the destruction of the insured premises resulted from arson for which the plaintiff corporation is responsible (corporate arson). On appeal, Vicksburg complains of several errors in the trial court's instructions to the jury and, additionally, contends that the trial court improperly denied its motion for judgment notwithstanding the verdict (based on the alleged insufficiency of evidence) and alternatively for a new trial. Finding no error, we affirm.

*Context Facts*

In February 1977 Vicksburg purchased a factory for the sum of $175,000 and executed a deed of trust to secure the purchase

price. It executed other deeds of trust to secure further borrowings, at least $50,000 of which was secured by the personal guaranties of the three initial stockholders, Gangwer, Stone, and Mount (who each still owned 25% of the stock at the time of the fire). In March 1977 Aetna issued a fire insurance policy to Vicksburg on the corporate property. This policy contained a provision requiring that the insured exercise due diligence in maintaining in complete working order a sprinkler system in the insured property.

On May 24, 1977 an incendiary fire occurred in the insured premises and resulted in damage to the sprinkler system. Due to this fire, Aetna paid the plaintiff the amount of $127.50 for damages resulting to the sprinkler system. Because damage to one head of the sprinkler system resulted in water leakage, the whole system was turned off approximately three weeks after the fire.

On July 15, 1977, another fire occurred, prior to the repair of the sprinkler system and while it was disconnected, which totally destroyed the insured premises. As earlier stated, Aetna refused to pay this fire loss, and Vicksburg brought the present suit to recover for same. Substantial evidence indicated that the fire was of incendiary origin. Vicksburg strongly contends, however, that insufficient evidence supports Aetna's factual claims (a) that a corporate officer-stockholder (Gangwer) was responsible for the arson, (b) that, if so, Vicksburg should be held responsible for Gangwer's individual acts so as to be chargeable therefore (under the "corporate arson" theory) and denied recovery on its fire insurance policy, and (c) that, at any rate, recovery should be denied because Vicksburg increased the insured hazard in violation of the insuring contract by failing to maintain (i. e., turning off) the sprinkler system.

On appeal, Vicksburg principally complains of: 1. deficiencies in jury instructions; and 2. the insufficiency of the evidence to establish (a) corporate arson or (b) *non*-waiver of the violation of the policy condition (which required Vicksburg to use due diligence to keep the sprinkler system in working order).

### 1. Jury Instructions

▪ In reviewing allegations of error in the trial court's instructions to the jury, we must determine whether the charge, considered as a whole, instructed the jurors so that they understood the issues to be tried and were not misled. *Frosty Lands Foods v. Refrigerated Transport*, 613 F.2d 1344, 1348 (5th Cir. 1980). There is no error if the instructions, when taken together, properly express the law applicable to the case, even though an isolated clause is inaccurate, ambiguous, incomplete, or otherwise subject to criticism. *Delancey v. Motichek Towing Service, Inc.*, 427 F.2d 897, 901 (5th Cir. 1970).

The plaintiff primarily contends that the trial court erroneously instructed the jury (a) as to the burden of proof that must be satisfied to establish a defense of arson, and (b) as to the elements necessary to support a finding of corporate arson.

### (a) Burden of proof necessary to establish the defense of arson

▪ No Mississippi cases that express the Mississippi law on point are cited or were discovered. The only Mississippi decision that Vicksburg cites to support its contention that the burden is one of "clear and convincing evidence," as in fraud, is *Hartford Fire Ins. Co. v. Associates Capital Corp.*, 313 So.2d 404 (Miss.1975). However, in that case the Mississippi Supreme Court characterized the issue of whether arson must be shown by clear evidence as "collateral" and, therefore, declined to decide it. *Id.* at 407. Thus, the case does not provide authority for the plaintiff's position.

The Fifth Circuit was presented the issue, in the review of an appeal involving the defense that the insured intentionally burned the insured premises, and it implicitly recognized the "preponderance of the evidence" as the correct burden of proof in Mississippi. *Williams v. Cambridge Mutual Fire Insurance Co.*, 230 F.2d 293, 294, 296 (5th Cir. 1956). Moreover, the rule applied

in most American states is that a "preponderance of the evidence" is the proper burden of proof. *See* 21 Appleman, Insurance Law and Practice, § 12682 (1980); 14 Couch on Insurance 2d, § 79:473 (1968). We are not persuaded that the trial court erred in concluding that, under Mississippi law, the burden of proof that must be satisfied to establish the defense of arson is merely by a preponderance of the evidence. We are unable to find that the jury instructions to this effect were incorrect.

(b) *Elements necessary to support a finding of corporate arson*

■ For purposes of an insurer's defense of corporate arson, whether an incendiary act is within either the knowledge or control of the insured corporation (so that the corporation itself is chargeable with the act) depends upon who knew of it and whether that person was acting with the authorization, knowledge, or ratification of the corporation. *Charles Stores, Inc. v. Aetna Insurance Co.*, 428 F.2d 989, 992 (5th Cir. 1970). If an individual, not in control of the corporate affairs, willfully set fire to the premises without the complicity of the corporation, then that act is not attributable to the corporation. *Id.* Additionally, the act of an officer of the corporation, not authorized by the shareholders, or the act of one shareholder, who is not practically the sole shareholder, will not be charged to the corporation. *Firemen's Mut. Ins. Co. v. Aponaug Mfg. Co.*, 149 F.2d 359, 361 (5th Cir. 1945).

■ The trial court instructed the jury that if it found that Gangwer—one of the twenty-five percent shareholders, an officer, and a board member—committed the act of arson and was also vested with virtually exclusive management and control of the corporate affairs, then the corporation must be denied recovery under the policy. This instruction adequately expresses the law applicable in the case when considered with the jury instructions as a whole.[1]

In *Kimball Ice Co. v. Hartford Fire Ins. Co.*, 18 F.2d 563, 566 (4th Cir. 1927), the court recognized that the actions of a corporate officer who exercises complete management and control (although owning only twenty-five percent of the stock) can prevent the corporation from recovering on its fire insurance policy. *See also* Annotation 37 A.L.R.3d 1385, 1387 (1971); 18 Couch on Insurance 2d, § 74:671 (1968). The rationale underlying this view is expressed in *Cora Pub, Inc. v. Continental Cas. Co.*, 619 F.2d 482, 486 (5th Cir. 1980):

> In no case can arson be attributed to a corporation unless it is established that the perpetrator acted with the corporation's assent. [Citation omitted.] Of course, since the corporation has no physical existence, it can only act through its officers and agents. Moreover, proof of corporate assent to arson, like proof of any other conspiracy, is not likely to be found in the archives of the corporation. Hence, courts have permitted insurers to attribute arson to a corporation by a variety of methods other than proof of a formal grant of authority to the arsonist.

*Id.* at 486.[2]

■ (Vicksburg also cites as error the trial court's inadvertent failure to give a jury instruction offered by the plaintiff. Since the omission was not objected to before verdict, it must constitute fundamental error to merit notice on appeal. *Simonton v. James*, 212 F.2d 174, 177 (5th Cir. 1954). Because Vicksburg's omitted instruction required that the shareholder who committed

---

1. The court also instructed the jury that recovery must be denied if *both* Gangwer and Mount were found to have committed the act while in *exclusive* management and control of the corporation.

2. But cf. the holding in *Owl & Turtle, Inc. v. Travelers Indem. Co.*, 554 F.2d 196 (5th Cir. 1977) (likewise interpreting Florida law), that the criminal act of the manager of a corporation's business enterprise who is allowed to make executive decisions is not to be attributed to the corporation without its knowledge or its consent. In that case, however, the individual who committed the incendiary act had no ownership interest in the corporation, nor was he an officer or member of the board of directors. *See generally* 18 Couch on Insurance 2d, § 74:671 (1968).

the incendiary act have exclusive control of the corporation (differing from the instruction actually given only in that it is not modified by "virtually"), the omission did not result in fundamental error.)

### 2. Sufficiency of the evidence

In order to review the sufficiency of the evidence, we must apply the standard of *Boeing Co. v. Shipman*, 411 F.2d 365 at 374–375 (5th Cir. 1969) (En Banc). By it, the court must examine the whole record in the light most favorable to the party opposing a motion for directed verdict or for judgment notwithstanding the verdict, and the court should grant the motion only if it believes "that reasonable men could not arrive at a contrary verdict." Reviewing by this standard, we find that substantial evidence supports Aetna's defenses (a) that Gangwer, a corporate officer with control of the corporate affairs, intentionally set the fire that destroyed the corporation's factory and (b) that the corporation did not waive its policy defense, by which under the policy conditions it was not liable for any policy-covered loss unless the insured exercised due diligence in maintaining its sprinkler system in complete working order.

### (a) Corporate arson

Regarding the sufficiency of the evidence supporting the defense of corporate arson, expert testimony was adduced at trial to the effect that the July 15, 1977 fire which destroyed the insured premises was incendiary in origin. Another expert testified that plaintiff was insolvent at the time of the July 15 fire. On June 30, 1977, the corporate bank account showed an overdraft of $23,689.05; accounts payable of July 15, 1977, totaled $67,602.34, whereas accounts receivable amounted to only $16,836.24. Approximately $9,600 of the latter amount was actually received by July 15, 1977.

The business experienced labor difficulties and cash flow problems throughout its existence. In early March, the corporation was no longer able to pay its officers' salaries. Also in March, the three original shareholders loaned $4,000 to the corporation out of a personal account. On April 4, 1977, the same three shareholders personally guaranteed a $22,000 loan to the corporation. They were also liable as personal guarantors on an earlier corporation note of $50,000.

On the day of the fire, Mount dismissed all of the factory employees, allegedly due to labor problems which had occurred earlier in the week. He testified that by 3:00 or 3:30 of the afternoon of the fire everyone had left the factory and it was securely locked. Only three of the shareholders, including Mount and Gangwer, and the plant manager had keys to the building. Experts testified that there were no signs of forced entry into the building and that the building could not have been gotten into without a key. One witness testified that he saw a man whom he later identified as Gangwer appear at the factory approximately thirty minutes after everyone had left. Gangwer was seen driving a tan woodgrain stationwagon fitting the description of Mount's car. He reportedly remained in the building for thirty minutes; within thirty minutes to an hour of his departure the fire was detected.

The secretary for the corporation testified that Gangwer ran the corporation and that the other officers of the corporation looked to him for the ultimate decisions. The four shareholders (Gangwer, Mount, Roberts, and Stone, who each owned one-fourth of the shares) did deny that any one of them had more control than the others. Nevertheless, the evidence reveals that Roberts, who was president of the corporation but did not even have a key to the building, was simply in charge of obtaining insurance for the corporation and was elected president because of his good financial condition. Stone, the original president, testified that he was not even sure whether he still held a position as an officer of the corporation. The evidence permitted the jury to find that to Gangwer and Mount, the remaining stockholders, were entrusted the affairs of the corporation, and that Gangwer's dominance amounted to exclu-

sive control. (See also footnote 1, and the substantial evidence indicating that Mount was a participant in facilitating arson by Gangwer and in efforts to prevent discovery of it.)

The evidence suggesting a strong motive for arson and the opportunity to commit the incendiary act, when combined with the testimony regarding Gangwer's control and his presence at the factory immediately prior to the fire, supports a jury finding of corporate arson.[3]

(b) *Aetna's alleged waiver of policy defense based on disconnecting the sprinkler.*

██ The insurance policy required Vicksburg, the insured, to exercise due diligence in maintaining its sprinkler in complete working order. It is not substantially disputed that a violation of this policy condition, thus substantially increasing the hazard, would defeat coverage of the present loss. However, aside from a non-impressive attempt to show the requisite due diligence, Vicksburg principally contends that its failure to have the sprinkler system operative at the time of the fire was waived. The waiver is supposed to have resulted from the knowledge of Aetna's general agent that the system had been disconnected at the time Aetna accepted premiums and "re-issued the policy" (i. e., issued endorsements to it).

Following the earlier May 24, 1977 fire, Vicksburg decided to disengage the sprinkler system due to a leakage from the damaged sprinkler head. Gangwer testified that the system was turned off in mid-June and that on June 24, 1977 he made an unsuccessful attempt to contact a sprinkler repairman. Thus, the sprinkler system remained disengaged, and no repairs were attempted, in the month previous to the July 15, fire.

With respect to the question of Aetna's knowledge of the disengaged sprinkler system, Gangwer testified that Aetna's agent visited the plant in mid-June. At that time, the agent asked whether the plaintiff had received Aetna's check for the repair of the damaged sprinkler head. The agent was not specifically told that the sprinkler system had been completely turned off, and there is no evidence in the record that he knew.

Gangwer made only one attempt to contact a sprinkler repairman prior to the July 15 fire. The shareholders testified that they were told that the repair of the sprinkler had required a special wrench; the Vicksburg fire chief denied that any special type of wrench was needed.

In summary, again the trial court record contains sufficient evidence to support a jury finding that Aetna did not waive the sprinkler system provision of the policy and that plaintiff had increased the hazard due to its failure to use due diligence in maintaining the sprinkler system in good working order.

*Conclusion*

Having reviewed the record and having considered the arguments raised by plaintiff, we conclude that there is no reversible error. The judgment of the district court is AFFIRMED.

---

**3.** In *Crown Colony Distr., Inc. v. United States Fire Ins. Co.,* 510 F.2d 544, 545 (5th Cir. 1975), this court concluded that a jury verdict finding corporate participation in or authorization of the arson was based on substantial evidence, which included the failing financial condition of the corporation, recently acquired increased insurance coverage, and circumstantial evidence indicating that the manager of the corporation participated in the act of arson. *Id.* at 545.