### FIREMEN'S MUT. INS. CO. v. APONAUG MFG. CO., Inc., et al.

### No. 11270.

Circuit Court of Appeals, Fifth Circuit.

May 11, 1945.

---

Ross R. Barnett, Rufus Creekmore, and H. H. Creekmore, all of Jackson, Miss., for appellants.

Ben F. Cameron and Lester E. Wills, both of Meridian, Miss., Japtha F. Barbour, Sr., of Yazoo City, Miss., and Toxey Hall and Lee D. Hall, both of Columbia, Miss., for appellees.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

This appeal is from a summary judgment for the defendants on a complaint brought by appellants against the appellees for damages as for a tort. The plaintiffs alleged that they were insurers against loss by fire of a cotton mill belonging to Aponaug Mfg. Co., Inc., when on Dec. 21, 1938, R. D. Sanders, its president and treasurer and sole stockholder, and exercising sole control over the corporation, in conspiracy with the mill superintendent, C. D. Kent, and one Noel McMahan, burned the mill to collect the insurance, and that $187,634 was paid on a statement of loss in that amount presented by R. D. Sanders for the Company; and that he fraudulently concealed the fact of the fraudulent fire. Judgment was prayed against all and each of the defendants.

The Company's answer admitted the insurance, the fire and the collection of $187,634 on a statement of loss presented by Sanders, and that he was its president and treasurer, but denied that he was sole stockholder or exercised full control, and denied he had any authority to so conspire, or that any such conspiracy occurred. Kent answered admitting he was superintendent but denying the conspiracy, or knowledge of the insurance. Sanders denied he was sole stockholder or controlled the Company, but admitted he was president, treasurer, and a director of the Company, and a co-trustee of the stock along with two others, and that he was acting as general manager of the Company under bond, but he denied the conspiracy to burn the mill; and otherwise adopted the answer of the Company. McMahan was later made a defendant, but if served, he made no answer. No judgment was entered as to him. A jury trial was duly demanded.

On the face of the pleadings therefore there were issues as to the fraud of the fire, and who were responsible for it; as to the concealment of the non-liability of the insurers when the loss was settled; and a subsidiary issue as to Sanders' ownership and control of the Company. These issues were material to the case or cases alleged. If Sanders, Kent and McMahan wilfully set fire to the mill, without the complicity of the corporation, in order to cause the insurers to pay, they committed a wrong, and would be individually liable for the injury intentionally done. The insurance would remain valid, and the corporation for its innocent stockholders and creditors could collect, and the insurers after paying would ordinarily be subrogated to the corporation's right of action against the burners of its property; and in our judgment, though subrogation is not expressly alleged in the complaint as a ground of recovery, the wilful setting of the fire and intentional injury to the insurers would give them a direct right to sue. 36 C.J.S., Fires, §§ 11, 12. Another, and more prominently stated ground of suit is based on the complicity of the insured corporation. If it set a fraudulent fire to collect its insurance, it would have no better right to the insurance money than an insured individual would; but there is the question whether the fire, even though wilfully set by someone connected with the corporation, was really set by the corporation. It seems that such act of an officer not authorized thereto by the stockholders, or the act of one but not the sole stockholder, will not be charged to the corporation to the prejudice of innocent stockholders; but if he is practically the sole stockholder, the corporate entity will be disregarded, and his fraud be held as that of the corporation. Sec. 29 Am. Jur., Insurance, § 1028, 1029. There is authority too to the effect that if the incendiary is in control of the business policies of the corporation, though not sole stockholder, the insurance is defeated by his fraud, Kimball Ice Co. v. Hartford, 4 Cir., 18

F.2d 563, 52 A.L.R. 799, but we do not at present express an opinion on that point.

■ The motions for summary judgment of course raised the question whether these issues, though in law material, were "genuine". Rule of Civil Procedure 56(e), 28 U.S.C.A. following section 723c. A pretended issue, one that no substantial evidence can be offered to maintain, is not genuine. The rule provides that the genuineness of an issue made by the pleadings may be promptly tested by summary proceedings before the judge in which ex parte affidavits may be used. In this case the defendants presented affidavits from Sanders, Kent and McMahan that there was no conspiracy, and no fraudulent fire, though it was evidently incendiary; and there was record proof that the stock of the Company was vested in three trustees under the will of J. W. Sanders, R. D. Sanders being a trustee and the beneficial owner of one-eighth of the stock. The trustees elected themselves as directors of the Company, and R. D. Sanders held the offices above stated. One trustee had died at the time of suit, but the third made affidavit that so far as he knew no one connected with the Company had anything to do with the fire or any authority to conspire to cause it. Against this the plaintiffs introduced two sworn statements made by McMahan to local police officers in 1940, that he and Kent had been hired by R. D. Sanders to burn the mill to collect the insurance, and that two efforts had failed but the third succeeded. It was proved that McMahan and Kent were indicted for the arson and McMahan was on his plea of guilty sentenced to the penitentiary. He had reiterated this account of the burning to the plaintiffs in a written statement shortly before the complaint was filed. Before the hearing his deposition was taken by the defendants and his testimony was a repudiation of these three statements, and that he knew nothing of the origin of the fire. The plaintiffs having thus lost their main witness were given time to secure other evidence. That presented included an affidavit that some time after the mill was burned Kent had told one affiant that the new automobile in which he was riding Sanders had given him, besides $5,000, for burning the mill. This affiant later gave another affidavit that Kent was quite intoxicated at the time and affiant paid no attention to

what he said. There was also an affidavit from one Germany in brief that in 1938 he was friendly with Kent and through him met Sanders; Sanders asked if he wanted to make some money, that he wanted to get rid of the mill; a second time Sanders said he wanted the mill completely burned and would pay somebody $1,000 to do the job; and a third time Sanders said he had got Noel McMahan to do the work and affiant could help, but affiant declined; that the night of the fire, and just after the fire, affiant saw Kent who said he was going to celebrate with Noel, and would call Sanders up (who lived in another city) and tell him the damn job is over with; and affiant a few days later heard McMahan tell his wife to call Kent and Sanders up and tell them if they did not come and pay him out of jail he was going to tell the whole damn thing about burning the mill. A number of impeaching affidavits were filed attacking both the character and mentality of Germany, and some affidavits supporting him were also filed. A proposal was made by the plaintiffs to take his deposition in the presence of the judge that his manner and demeanor might be observed, but this was not done. Application was also made by plaintiffs to take regularly the deposition of J. C. Sanders, a brother of R. D. Sanders, who lived in Alabama and owned one-eighth of the Company's stock, and who it is claimed would testify to the full and complete control of R. D. Sanders over the Company's affairs. The taking of the deposition was opposed on a showing by certified transcript that the witness had been indicted in the District Court of the United States for the Southern District of Alabama for perjury in connection with a claim for insurance on another burned cotton mill, and that he was convicted and sentenced to the penitentiary. The judge held him an incompetent witness and ordered that his deposition be not taken. After argument and consideration the judge wrote a letter, in lieu of an opinion, in which he expressed the view that in a fraud case in Mississippi the evidence of the fraud must be more than a preponderance, but must be clear and convincing, that the testimony of Germany was unreasonable, and he had denied knowing anything about it right after the fire, and was so impeached otherwise as to be unworthy of belief; and the statements attributed to Kent would be only hearsay because made after the

alleged conspiracy had been consummated; so that if a verdict were rendered for the plaintiffs the court would be compelled to set it aside. Summary judgment was accordingly entered for the defendants.

 This judgment was erroneous. The statements of Kent were admissions of his own implication in the arson, whenever made. Likewise the three former statements of McMahan were admissions that could be used as evidence against McMahan. He would hardly have taken a penitentiary sentence on a plea of guilty if he did not burn the mill, and no motive for his burning it appears except that which he originally asserted. Germany's testimony that Sanders wanted to get rid of the mill and was trying to hire someone to burn it is monstrous, but such things have happened. It is not in a legal sense incredible, and is admissible against Sanders. There is thus some admissible evidence against each to show that each had a hand in a wilful fire, for which they may be liable in damages. The impeachment of the witness Germany is not a matter for decision on summary judgment. A jury trial had been demanded in this case, and it being a suit at common law, was a constitutional right. The success of an attempt to impeach a witness is always a jury question, as is the credibility of the witnesses where they contradict one another, or themselves. We do not think the judge ought on a motion for summary judgment to have considered the affidavits attacking or sustaining the character of the witness. He should not have concerned himself at this time with the question what he would do if the jury should render a verdict for plaintiffs. A judge indeed does not know what he would do in that regard until he has heard the trial in open court before the jury and has the benefit of the opinion of the jury expressed in their verdict. Only when the evidence is such that it is clear the jury would have none to go on, though they believed that unfavorable to the movant for summary judgment, can the motion be sustained and a jury trial denied.

 We think also that the testimony of J. C. Sanders ought to be allowed taken. He is a stockholder equally interested in the mill with R. D. Sanders and has had, it appears, fire troubles with his cotton mill. His testimony might throw light on the Company's affairs and liability. A conviction of perjury, though creating a general disqualification to testify at common law and in Mississippi, goes only to the convict's credit in a federal court, at least when the conviction is under the federal statute punishing prejury. Prior to 1909, under R. S. § 5392, a part of the punishment for perjury under the law of the United States was an incapacity to give testimony in any court of the United States. The Criminal Code, 18 U.S.C.A. § 231 and Historical Note, wholly omits that result of conviction, and expressly repealed R.S. § 5392. See Lucks v. United States, 5 Cir., 100 F.2d 908; Rosen v. United States, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406. The Rosen case asserts the general modern tendency to hear the witness and let conviction of crime affect only his credibility. The Act of 1906, 28 U.S.C.A. § 631, made the competency of witnesses in a civil case to depend on the State law, but Rule of Civil Procedure, 43 (a), modifies this, and directs the admission of all evidence that is admissible either under the statutes of the United States or the rules observed in the federal courts or the rules applied in the courts of the State where the trial is held. Where the question depends on the effect of a conviction of perjury under the perjury statute of the United States, we think that statute controls, and having been altered in 1909 so as to make the testimony of the convict admissible it ought to be admitted. We need not decide what a Mississippi court would do under the statutes of Mississippi.

 We may observe finally that, though it might be difficult to conclude that one who as the president and treasurer of a corporation could not sell the corporation's plant without authority from the stockholders, could as a corporate act burn it to collect insurance, yet as the treasurer he has the authority and duty to represent the corporation in collecting the insurance, and any concealments or other frauds committed by him in so doing would be attributable to it. If persons not authorized by the corporation burned its mill, that would not affect the validity of the insurance, and a failure by the treasurer to tell what he knew about it would not necessarily be a fraudulent concealment. But if he knew that the mill was burned by authority of the corporation to collect the insurance, his making claim for insurance which he knew

was not owing, without disclosure of the facts, would be a fraudulent concealment. We do not wish to try to settle the law of the case at this time, but only to emphasize the difference in the basis on which liability may arise on the part of the corporation, and on the part of the individual defendants. The corporation can be liable only if it by competent authority fraudulently burned its mill and then by concealment of its fraud collected insurance not really due. The individuals sued may be liable if they wilfully burned the mill, though the corporation was not a party to any plan to do it.

The case is such in our opinion that it ought to be fully developed before a jury in regular course, and not disposed of by summary judgment.

Judgment reversed.