JAMES HOTEL COMPANY, Tower Club, Inc., and Palace Building Company, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 7281.

United States Court of Appeals Tenth Circuit.

Nov. 29, 1963.

Roy C. Lytle, Oklahoma City, Okl. (Lytle, Soule & Emery, Oklahoma City, Okl., on the brief), for petitioners.

Alec A. Pandaleon, Atty., Dept of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Attys., Dept of Justice, on the brief), for respondent.

Before PHILLIPS, HILL and SETH, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a petition to review a decision of the Tax Court. It involves corporate income taxes for the fiscal years ending on August 31 in each of the years, 1955, 1956, and 1957. The petitioner, Tower Club, Inc.,[1] is a subsidiary of the James Hotel Company.[2]

The facts, which are not in dispute, are these:

James and Tower Club are corporations organized and existing under the Oklahoma Business Corporation Act. They were in existence during all of the times material herein.

The Tower Club operates a private club.

The question involved is whether amounts paid to the Tower Club in excess of the par value of its stock by member stockholders constituted taxable income or contributions to capital.

James, at all times material herein, owned and operated the Skirvin Hotel and the Skirvin Tower Hotel. The basement of the Skirvin Tower Hotel building was vacant and unfurnished prior to 1954. James conceived the idea of an exclusive club to occupy such vacant basement space. On April 6, 1954, it incorporated the Tower Club, with an authorized capital of 1,000 shares, all of the same class, par value $10. On October 26, 1954, the articles of incorporation of the Tower Club were amended, so as to provide for 500 shares of Class A stock of the par value of $10, with no voting rights, and 1,000 shares of Class B stock of the par value of $10, with all the voting rights. On August 29, 1955, the articles of the Tower Club were further amended so as to provide for 5,000 shares of Class A stock with a par value of $10, with no voting rights, and 1,000 shares of Class B stock with a par value of $10 per share, with all the voting rights. Under the first amendment, Class A and Class B stock were to share equally with respect to dividends and preferences on liquidation. Under the second amendment, Class A stock was preferred as to dividends of six per cent of the par value each year, provided the amount of dividends did not exceed the net earnings, and Class A stock was to be preferred on liquidation, but was to receive on liquidation only the amount of the par value of Class A shares, that is, $10, and under such second amend-

---

1. Hereinafter called Tower Club.

2. Hereinafter called James.

ment Class B stock was not to participate in dividends in any year until the preferred rights in Class A stock had been satisfied and only on liquidation, after the holders of Class A stock had received $10 a share, but after the holders of such Class A stock had received $10 a share, the Class B stock was to receive all of the remaining liquidation dividends.

Prior to August 31, 1955, persons who joined the Tower Club were required to pay as follows: Class A members, residents of Oklahoma County, $350, plus federal and state excise taxes; Class B members, residents of the State of Oklahoma, but not residents of Oklahoma County, $150, plus such taxes; and Class C members, nonresidents of the State, $100, plus such taxes. Subsequent to August 31, 1955, the amounts were increased as follows: Class A, $500; Class B, $200; and Class C, $150. One share of Class A stock was issued to each member.

Prior to August 31, 1955, the amount paid by a member in excess of the excise taxes was recorded on the books of the Tower Club as an initiation fee. After August 31, 1955, such membership fees, exclusive of excise taxes, were credited directly to capital accounts.

The costs of equipping the Tower Club and obtaining its fixed assets were paid out of and charged against the paid-in surplus account on the records of the Tower Club. No part of the paid-in surplus has ever been used for the purpose of paying operating expenses. Additional funds to pay the expense of equipping the Club and acquiring its fixed assets were paid from money borrowed by the Club from James.

On October 18, 1955, 4,000 shares of Class A stock were issued to the James Hotel Company for $10 per share. On the same date Class B stock was issued as follows: James Hotel Company— 996; Dan James, G. W. James, T. G. Stargel and Paul Banhart—each one share, or a total of 1,000.

Section 61 of the Internal Revenue Code of 1954 (26 U.S.C.A. § 61) in part reads:

> "(a) *General definition.*—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:
>
> "(1) Compensation for services * * * and similar items;
>
> * * * * * "

Section 118 of the Internal Revenue Code of 1954 (26 U.S.C.A. § 118) in part provides:

> "(a) *General rule.*—In the case of a corporation, gross income does not include any contribution to the capital of the taxpayer."

Regulation § 1.118–1 provides that the exclusion shall not apply "to any money or property transferred to the corporation in consideration for goods or services rendered."

■ The Tax Court held that the amount paid by the respective members in excess of $10 per share and excise taxes was in the nature of an initiation fee, "more indicative of a payment for services than a payment for stock." In closing its opinion, the Tax Court said:

> "The apparent intent of the members was to obtain the use of the facilities and services of the Tower Club. Only those who paid the whole 'initiation fee' were entitled to such privileges. A realistic appraisal of all the facts stipulated in this case does not warrant treating the 'initiation fees' as contributions to capital. Accordingly, we hold that the respondent correctly determined that the amounts paid by the members, over and above the par value of the stock, constituted taxable income."

We do not think that the payments in excess of the $10 par value were payments for goods or services, as contended for in the respondent's brief. A member who obtained goods or services at

the Tower Club paid therefor. On the other hand, we do not think the amounts so paid by members were contributions to capital. They were payments required of prospective members in order to become members and enjoy the privileges of membership in the Club. In other words, the payments by members of such amounts in excess of the par value of their stock was for the privilege accorded them of obtaining in the environment of a private club food and drink for themselves, members of their families, and guests. It was a payment for the privilege of membership and not a contribution to capital.[3] We arrive at that conclusion for these reasons: First, Class A members, who lived in Oklahoma City and would normally use those privileges most, paid the greater initiation fee; Class B members, who would normally use the privileges of the Club less than Class A and more than Class C, were charged an intermediate amount, while Class C members, who were nonresidents of Oklahoma and would ordinarily use the Club less than Class A and Class B members, were charged the least amount. On the other hand, James, which purchased 4,000 shares of Class A stock, but which obviously could not acquire Club memberships, paid only the par value of $10 per share. Thus, while James did not pay for or obtain Club memberships, it shared in dividends and on liquidation equally with member owners of Class A stock. Moreover, Class A, Class B, and Class C members, who paid different amounts as an initiation fee, participated equally with respect to both earning and liquidation dividends on the basis of $10 per share, but their participation was limited to six per cent of $10 per year, payable out of earnings, and to $10 per share on liquidation; and upon liquidation Class B stockholders received all of the liquidation dividends in excess of the $10 per share paid to owners of Class A

stock. Those facts, we think, fully warranted the Tax Court in holding that the amounts paid by the respective classes of members were for the privileges of the Club and not as a contribution to capital.

The fact that the funds obtained by the Tower Club from the sale of its memberships were devoted to capital expenditures is not controlling. There were no restrictions on the use of such funds. The Tower Club, which was controlled by the Class B stockholders, was free to expend such moneys for any purpose it saw fit.

The denial by the Tax Court of petitioners' motion to vacate the decision, with respect to the year 1955, did not constitute reversible error. The petition was filed out of time and whether leave to file the petition should have been granted, under the circumstances, rested within the sound discretion of the Tax Court.

Affirmed.

---

3. Cf. Detroit Edison Co. v. Commissioner, 319 U.S. 98, 63 S.Ct. 902, 87 L.Ed. 1286; Teleservice Co. of Wyoming Valley v. Commissioner, 3 Cir., 254 F.2d 105; United Grocers, Ltd. v. United States, 9 Cir., 308 F.2d 634, 639, 640;

Federal Employees' Distributing Co. v. United States, D.C.S.D.Cal., 206 F.Supp. 330, 333; Community T.V. Association of Havre v. United States, D.C.Mont., 203 F.Supp. 270, 272, 273.