## Oakland Hills Country Club, a Michigan Nonprofit Corporation, Petitioner v. Commissioner of Internal Revenue, Respondent

Docket No. 8597–78.    Filed April 10, 1980.

*E. James Gamble*, for the petitioner.
*F. Michael Kovach, Jr.*, for the respondent.

## OPINION

DAWSON, *Judge:* This matter was heard by Special Trial Judge Caldwell[1] at the motions session in Washington, D.C., on November 28, 1979, on petitioner's motion for summary judgment pursuant to Rule 121, Tax Court Rules of Practice and Procedure, and respondent's objection thereto.

Respondent determined the following deficiencies in petitioner's Federal income taxes:

| *FYE Sept. 30—* | *Deficiency* |
|---|---|
| 1972 | $176,031 |
| 1973 | 25,953 |
| 1974 | 35,317 |

The petition in this case alleged error only with respect to adjustment C in respondent's statutory notice of deficiency. There were four items embraced within adjustment C, and petitioner's motion for summary judgment addressed itself only to three of those items. At the hearing, the petitioner conceded item 3 of adjustment C (other initiation fees). Thus, the issues presented for decision are: (1) Whether petitioner realized income from the sale of its treasury stock in each of the fiscal years and from the sale of newly issued stock in the fiscal years 1972 and 1974; and (2) whether petitioner realized income from special assessments used for capital improvements in each fiscal year.

*Issue 1. Treatment of Amounts Received from Sales of Stock*

Petitioner, which was organized in 1916, is a nonprofit corporation organized under the laws of the State of Michigan. Its principal office is in Birmingham, Mich. The articles of incorporation of petitioner set forth its general purposes as follows: To promote social intercourse, the playing of golf, tennis, and polo among its members, and to provide for them the convenience of a clubhouse. During the taxable years in question, petitioner was not exempt from taxation and filed corporate income tax returns.

---

[1] Special Trial Judge Caldwell retired on Feb. 29, 1980, and the petitioner's motion for summary judgment was reassigned by order dated Mar. 18, 1980, to Judge Dawson for disposition.

The articles of incorporation, as amended, in effect during the taxable years in question authorize 600 shares of one class of common stock with a par value of $100 per share. They also provide that the sale and transfer of the stock of the corporation shall be governed by bylaws adopted by the petitioner.

The bylaws in effect during such taxable years provide that membership in petitioner is divided into two general classes, corporate and privileged. The delineation between these classes of membership set forth in the bylaws is as follows:

(a) Corporate Membership shall consist of Class A Resident Members only. Each such member shall be the owner of one share only of the Capital Stock of this Club. Such members shall be the only persons eligible to stock ownership, the right to vote at club meetings and the right to hold office herein. Such members, and the immediate members of their families, except male persons over twenty-one years of age, shall be entitled to all the privileges of the Club. * * *

(b) Privileged Membership shall be divided into Class B Resident, Life, Social, Non-Resident, Junior, Honorary, Women's, Clergy, and Service Memberships. Except as otherwise provided herein, and subject to such regulations as may be prescribed by the Board of Directors, Privileged members shall be entitled to the use of all the facilities of the Club in like manner as Corporate members but they shall own no stock, and shall have no right to attend meetings, shall have no ownership interest in the corporation or its properties, and shall not hold office or vote at club meetings. * * *

The bylaws further provide that only corporate members have the right to vote for the election of officers and all other proper business, and that on liquidation of petitioner, the assets shall be divided among the corporate members. Corporate members also have the sole right to hold office and to amend the articles of incorporation and the bylaws.

The transferability of shares of stock in petitioner is restricted by the bylaws. During the period in question, all shares of stock sold by corporate members were purchased by petitioner and became treasury stock. The amount paid for these shares was set by the corporate members of petitioner and during the taxable years in issue was $2,500 per share. Petitioner sold shares of treasury stock and authorized unissued stock to new corporate members. During the taxable years here involved, the petitioner received $7,500 per share for each such share sold and received the following amounts in exchange for its stock:

| FYE Sept. 30— | Amount |
|---|---|
| 1972 | $307,500 |
| 1973 | 291,750 |
| 1974 | 379,000 |

The money received by petitioner in the 3 taxable years in exchange for the issuance of its treasury stock and its authorized, unissued stock was allocated to its capital improvements fund.

The stockholders' equity of the corporate members at the end of each year was as follows:

| FYE Sept. 30— | Amount |
|---|---|
| 1972 | $2,365,778 |
| 1973 | 2,462,832 |
| 1974 | 2,653,743 |

The receipts and the payments that were allocated to the capital improvements fund, and the amount of the stockholders' equity, were communicated to the corporate members in the audited financial statements contained in the petitioner's annual report that was sent to its corporate members each year.

Petitioner did not include in income any of the $7,500 payments it received from new corporate members in exchange for its treasury stock or for its newly issued stock. In his notice of deficiency, respondent determined that $5,000 of each such payment was in the nature of initiation fees or transfer fees, and therefore taxable as ordinary income. In his objection to petitioner's motion for summary judgment, respondent contends that such $5,000 portions represent payments to petitioner for the use of its service and facilities; but at the hearing, he stated that he was not abandoning his position that those portions represent initiation fees or transfer fees.

Section 1032 of the Code provides that "No gain or loss shall be recognized to a corporation on the receipt of money or other property in exchange for stock (including treasury stock) of such corporation." Section 1.1032–1(a), Income Tax Regs., states in relevant part:

(a) The disposition by a corporation of shares of its own stock (including treasury stock) for money or other property does not give rise to taxable gain or deductible loss to the corporation regardless of the nature of the transaction or the facts and circumstances involved. For example, the receipt by a corporation of the subscription price of shares of its stock upon their original

issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be equal to, in excess of, or less than, the par or stated value of such stock. Also, the exchange or sale by a corporation of its own shares for money or other property does not result in taxable gain or deductible loss, even though the corporation deals in such shares as it might in the shares of another corporation. * * *

A motion for summary judgment may be granted where there is no genuine issue as to any material fact and where the moving party is entitled to prevail as a matter of law. The thrust of respondent's position on this issue is that the motive or intent of each of the purchasers of petitioner's treasury stock and its newly issued shares must be known, and that a material issue of fact is presented which can only be resolved by the taking of the testimony of those purchasers. Consequently, he urges that petitioner's motion for summary judgment should be denied.

Respondent relies on *University Country Club v. Commissioner*, 64 T.C. 460 (1975); *Affiliated Government Employees' Distributing Co. v. Commissioner*, 322 F.2d 872 (9th Cir. 1963), affg. 37 T.C. 909 (1962), cert. denied 376 U.S. 950 (1964); and *James Hotel Co. v. Commissioner*, 39 T.C. 135 (1962), affd. 325 F.2d 280 (10th Cir. 1963), to support his contentions. Petitioner argues that these cases are distinguishable for various reasons.

We agree with respondent. The intent or motive of the corporate members in making payments to petitioner involves a genuine issue of material fact which is critical to the characterization of such payments.[2] In our opinion, the petitioner's claim that the existence of a proprietary interest in the country club controls the members' intent is incorrect. It is the substance of the transaction and not the form which must control the consequences for Federal tax purposes. *University Country Club v. Commissioner*, 64 T.C. at 471. In view of the affidavit of Revenue Agent Jack Robinson attached to respondent's memorandum objecting to the motion for summary judgment, petitioner's prospective members could have had a proprietary interest only to the extent of $2,500 from which may be inferred

---

[2]By order dated May 9, 1979, the Court denied petitioner's motion for judgment on the pleadings, stating:

"It is readily apparent that a genuine issue of material fact remains, i.e., whether the payments were exclusively for the issued stock or whether, as a matter of substance, such payments were received partially in consideration for stock and partially in consideration for services. See *University Country Club v. Commissioner*, 64 T.C. 460 (1975)."

an intent to contribute capital. The absence of any greater proprietary interest may preclude the inference that their motive with regard to the remaining $5,000 of the $7,500 payment was to purchase corporate stock. See *Washington Athletic Club v. United States*, 614 F.2d 670 (9th Cir. 1980).

With respect to a motion for summary judgment, we said in *Hoeme v. Commissioner*, 63 T.C. 18, 20 (1974):

> We observe that the granting of a motion for summary judgment is the exception in Federal practice. The existence of any reasonable doubt as to the facts at issue must result in the denial of the motion. 6 Moore, Federal Practice, par. 56.02 [10], p. 2045 (2d ed. 1948). See also *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962), where the Supreme Court said:

> On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion. * * *

> The value of a trial with full opportunity to observe the parties and their evidence is obvious. This is especially so where the question of intent is present. *Firemen's Mut. Ins. Co. v. Aponaug Mfg. Co.*, 149 F.2d 359 (C.A. 5, 1945).

We conclude that on this ground, the petitioner's motion for summary judgment must be denied.

Petitioner urges, as an alternative ground for granting summary judgment, that "there is no rational basis to distinquish between the petitioner and the security exchange described in Rev. Rul. 77–354," and thus, the petitioner should be excepted from the retroactive application of that ruling in the same manner that security exchanges are excepted. Not only do we believe that the equivalence of the two entities involves a genuine issue of material fact,[3] but we also think the petitioner does not fall within the exception to retroactive application carved out in Rev. Rul. 77–354, 1977–2 C.B. 50. Since a country club lacks the business aura of a security exchange, it is doubtful whether G.C.M. 4015, VII–1 C.B. 120 (1928), was ever applicable to petitioner, and thus, the petitioner would be beyond the scope of Rev. Rul. 77–354, which serves only to apply to security exchanges the general principles of corporate law already applicable to country clubs. Moreover, even if the petitioner is sufficiently similar to a security exchange to invoke G.C.M. 4015,

---

[3]See the Court's order dated May 9, 1979, denying petitioner's motion for judgment on the pleadings.

the petitioner, who has the burden of proof, would have to show that the Commissioner abused his discretion under section 7805(b). See *Dixon v. United States*, 381 U.S. 68 (1965); *Cameron v. Commissioner*, 68 T.C. 744, 749 (1977).

## Issue 2. Treatment of Special Assessments for Capital Improvements

Prior to the years in question, the petitioner initiated a program for improvement of its facilities. These capital improvements were financed by notes payable. During each year, the petitioner found it necessary to levy a special assessment on all its members to retire the obligation incurred for the capital improvements. The purpose of the assessment was clearly explained by a notice sent to each member. The funds generated by the assessment were earmarked for capital improvements on petitioner's books. All such funds were actually used to retire the debt incurred for capital improvements. Total assessments so received by petitioner in 1972, 1973, and 1974 were $56,812, $56,463, and $57,400, respectively.

Petitioner treated the special assessments as contributions to capital under section 118 and did not include the amounts received in payment of the assessments in income on its returns. In his notice of deficiency, respondent determined that such amounts did not qualify as contributions to capital and included the amounts in petitioner's income.

Section 118 provides that "gross income does not include any contribution to the capital of the taxpayer." Section 1.118–1, Income Tax Regs., provides as follows:

*Contributions to the capital of a corporation.*

In the case of a corporation, section 118 provides an exclusion from gross income with respect to any contribution of money or property to the capital of the taxpayer. Thus, if a corporation requires additional funds for conducting its business and obtains such funds through voluntary pro rata payments by its shareholders, the amounts so received being credited to its surplus account or to a special account, such amounts do not constitute income, although there is no increase in the outstanding shares of stock of the corporation. In such a case the payments are in the nature of assessments upon, and represent an additional price paid for, the shares of stock held by the individual shareholders, and will be treated as an addition to and as a part of the operating capital of the company. Section 118 also applies to contributions to capital made by persons other than shareholders. For example, the exclusion applies to the value of land or other property contributed to a corporation by a governmental unit or by a civic group for the purpose of inducing the corporation to locate its

business in a particular community, or for the purpose of enabling the corporation to expand its operating facilities. However, the exclusion does not apply to any money or property transferred to the corporation in consideration for goods or services rendered, or to subsidies paid for the purpose of inducing the taxpayer to limit production. See section 362 for the basis of property acquired by a corporation through a contribution to its capital by its stockholders or by nonstockholders.

Respondent contends again that the testimony of those who paid the special assessments, regarding their motive or intent in making such payments, is necessary to determine if they made such payments in consideration of goods and services rendered or to be rendered by petitioner, that there is a genuine issue of material fact, and that summary judgment on this issue should be denied.

From the record, it appears that the payments to petitioner involved in this issue were received from "all members—presumably both corporate members (petitioner's shareholders) and privileged members (nonshareholders of petitioner).

As to such payments received from nonshareholders, who had no equity in petitioner to be built up or augmented by such payments, we think the respondent is clearly correct. The regulations indicate that nonshareholder contributions may be capital in nature, but we think that their testimony as to their motive or intent is necessary before it can be determined whether their payments were capital in nature.

As to the payments received by the shareholders, who had a proprietary interest in petitioner, we think the motive and intent of the members would be controlling on the issue of whether or not the special assessments for capital improvements constitute contributions to capital. Hence, summary judgment would be inappropriate. The Supreme Court has held that payments to a corporation may be treated as capital contributions only if not intended for compensation for services, goods, or the use of facilities. *Detroit Edison Co. v. Commissioner*, 319 U.S. 98 (1943); *Brown Shoe Co. v. Commissioner*, 339 U.S. 583 (1950); *United States v. Chicago, Burlington & Quincy Railroad Co.*, 412 U.S. 401 (1973). In making this determination, it is the motive of the transferor that is controlling and not the "use" to which the contributed funds are applied by the taxpayer. Since the members' motive or intent in making the payments constitutes a genuine issue of material fact, the petitioner's motion for summary judgment must be denied. See *Washington Athletic*

*Club v. United States,* 614 F.2d 670 (9th Cir. 1980). That the funds were earmarked for capital improvements is of no aid to petitioner. In *United Grocers, Ltd. v. United States,* 308 F.2d 634, 640 (9th Cir. 1962), affg. 186 F. Supp. 724 (N.D. Cal. 1960), the amounts received by that association's members were specifically designated as "capital contributions" on all billings to members and were treated as such on all of the taxpayer's books and records. Capital improvements were acquired in each year in excess of the amounts so designated. Nevertheless, it was the "underlying motive" that was controlling. Because the fees and dues were paid as a condition to the use of services and facilities, they were treated as income unless the taxpayer could establish other characteristics of capital contributions which would rebut the inference that the payments were received for services.

As in *United Grocers,* it is questionable whether the members of Oakland Hills Country Club could not have had an investment motive for these payments since the only way they could recover any economic return from their membership would be to remain members until such time as the corporation was dissolved. Even then, the return would have no relationship to the amount they had previously paid in. See also *Edison Club v. Commissioner,* T.C. Memo. 1975–19, affd. without published opinion 535 F.2d 1241 (2d Cir. 1975), and *Washington Athletic Club v. United States, supra,* holding that the mere fact that the respective club's governing board set aside a portion of membership receipts for capital improvements after they were received did not provide a sufficient basis for excluding such receipts from taxable income. Consequently, we are unable to conclude that the petitioner is entitled to prevail, as a matter of law, with respect to the payments of special assessments by its shareholders.

Accordingly, petitioner's motion for summary judgment will be denied in all respects.

*An appropriate order will be issued.*