T. EUGENE SMITH AND JOAN H. SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 14786-82.
United States Tax Court
T.C. Memo 1983-706; 1983 Tax Ct. Memo LEXIS 78; 47 T.C.M. (CCH) 419; T.C.M. (RIA) 83706; November 29, 1983. *78 P seeks judgment as a matter of law in P's favor of the characterization of certain payments on a loan guarantee as an ordinary loss. A party may move for an adjudication in his, her or its favor if there is no genuine issue of material fact and a decision may be rendered as a matter of law. Held, P has not made a prima facie showing that there is no genuine issue of material fact. Held further, P's Motion for Summary Judgment is denied. Rule 121, Tax Court Rules of Practice and Procedure.
Carrington Williams, for the petitioners. Dahil D. Goss, for the respondent. CANTREL
MEMORANDUM OPINION CANTREL, Special Trial Judge: This case is before the Court on petitioners' Motion for Summary Judgment filed on August 26, 1983, pursuant to Rule 121(a), Tax Court Rules of Practice and Procedure.[1] Respondent, in his notice of deficiency *79 issued to petitioners on March 30, 1982, determined a deficiency in petitioners' Federal income tax for the taxable calendar year 1978 in the amount of $31,520.20. The adjustments, as determined by respondent in his deficiency notice, are as follows: (A) Business Bad Debt
$237,500.00 (B) Schedule D
(119,387.50) (C) Business Promotion
[2] 74.80 (D) Dues
[2] 800.00 (E) Partnership Losses
[2] 1,401.25 (F) Additional Compensation
[2] 2,065.00 $122,453.55 Two of the adjustments, (A) and (B), above, relate to a payment of $237,500 under a guarantee for a loan made by United Virginia Bank/National (UVB) to Fun & Fitness, Inc. (FFI), a corporation of which T. Eugene Smith (Smith) was a 25 percent shareholders. [3] FFI operated health spas throughout the Washington, D.C. metropolitan area. According to the facts presented by petitioners, FFI experienced financial difficulties because of the high rate of default on customer contracts with FFI. These contracts had been used as collateral for a $1,000,000 loan from UVB. Due to the defaults *80 FFI was unable to repay the loan, and in 1975 the loan was restructured.The new loan agreement with UVB required that Smith and James H. Berkey (Berkey), president of FFI, personally guarantee the loan. The guarantee was executed by Smith and Berkey on October 28, 1975. Despite the new arrangements FFI continued to experience financial difficulties, and in 1977 Smith and Berkey sold their FFI stock to Morton Gumpel [4] and Norman Pessin. However, Smith and Berkey remained as guarantors on the FFI loan. Ultimately, Smith and Berkey paid $237,500 each on the guarantee or a total of $475,000. As part of this transaction, Smith and Berkey were given notes from FFI totalling $480,000. Petitioners, on their 1978 joint return, had characterized Smith's payment on the guarantee as an ordinary loss and deducted *81 it, in full, from ordinary income. Respondent recharacterized this amount as a nonbusiness bad debt, deductible on petitioners' 1978 joint return as a short-term capital loss under section 166. [5] Petitioners challenge respondent's treatment of the guaranteed payment as a nonbusiness bad debt in their petition. Petitioners, by and through their motion, claim that there is no genuine issue of material fact relative to a determination under section 162(a), as an expense incurred to protect Smith's business reputation, or section 165(c)(2), as a loss incurred in a transaction entered into for profit. A determination in petitioners' favor under either statutory provision would be dispositive of the case. Accompanying petitioners' motion are affidavits executed by Smith and Berkey. These affidavits are, in part, identical and contain statements relating to the history of the transactions at issue and the purpose of the loan guarantees. As noted supra, Smith and Berkey were co-guarantors on the loan from UVB. Also included with the motion for summary judgment are a photocopy of a purported release, unsigned *82 by one of the parties, photocopies of checks from Berkey and Smith payable to UVB in the amount of $237,500 each, a photocopy of a Memorandum of Intent, [6] *83 and a photocopy of a signed Letter of Agreement. The Memorandum of Intent provides that Smith and Berkey do not have a right of subrogation against FFI (Memorandum, paragraph 10). However, the operation of most of the provisions in the Memorandum of Intent were contingent on closing the transaction with documentation acceptable to counsel for all parties by December 13, 1978 (Memorandum, paragraph 15). [7] Petitioners have not established that such a closing did occur as contemplated in the Memorandum of Intent of that the provisions of the Memorandum of Intent remained intact at the date of closing. [8] In addition the Memorandum of Intent indicates that FFI was to pay Smith and Berkey an amount which approximates the amount which they paid pursuant to their guarantee (Memorandum, paragraphs 7 and 8). Petitioners raise three claims through their motion and supporting memorandum of law which they argue are dispositive of the matter. These claims are: 1. Smith had no right of subrogation against FFI for his payment on the guarantee in 1978. Therefore, the loss was not a bad debt loss under section 166; 2. Smith made payment on the guarantee to protect his business reputation. Therefore, his payment would be an ordinary and necessary business expense deductible under section 162(a); and 3. *84 Smith made this payment as a result of entering into a transaction for profit. Therefore, his payment would be deductible under section 165(c)(2).
Petitioners raised other legal theories in their petition but do not rely on them in this summary judgment proceeding.
Respondent attaches to his objection filed on October 19, 1983, [9] an affidavit executed by his trial counsel which recites, in part, that: * * * 4. Upon review of the administrative files and the pleadings and any other matters of record in the captioned case, it is my belief that there is a genuine issue as to material facts as is more fully set forth and discussed in the accompanying notice of objection. [10] *85 [Emphasis added.] Respondent objects to petitioners' motion arguing, inter alia, that the documents submitted by petitioners do not conclusively prove that Smith had no right of subrogation at the time he made payment on the guarantee and that respondent is entitled to cross-examine Smith and Berkey as intent is a material issue of fact.
The granting of a motion for summary judgment is not favored. Normally a full trial is preferred, as the trial setting gives the trier of fact the opportunity to observe the parties and their evidence. Oakland Hills Country Club v. Commissioner,74 T.C. 35, 40 (1980); Hoeme v. Commissioner,63 T.C. 18, 20 (1974). Summary judgment will be granted under Rule 121 only if the pleadings and any other materials submitted to the Court show that there is no genuine issue of material fact and that a decision *86 may be rendered as a matter of law. The burden of proviing that there is no genuine issue of material fact is on the moving party, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. Jacklin v. Commissioner,79 T.C. 340, 344 (1982); Espinoza v. Commissioner,78 T.C. 412, 416 (1982). The opposing party need not come forth with affidavits or other documentary evidence unless the moving party makes a prima facie showing of the absence of a factual issue. Abramo v. Commissioner,78 T.C. 154, 163-164 (1982); Shiosaki v. Commissioner,61 T.C. 861, 864 (1974). See also C. Wright, A. Miller & M. Kane, 10A Federal Practice and Procedure: Civil, sec. 2727 (2d ed. 1983). Petitioners maintain that the affidavits and documents in support of their motion are sufficient to establish that there are no genuine issues of material fact relative to a determination under section 162(a) or section 165(c)(2). [11] We believe otherwise. Crucial to a determination that section 162(a) or section 165(c)(2) applies in this case is a finding that Smith and no right of subrogation against FFI under VA Code section 49-27 (1950). [12] Petitioners contend that such *87 right had been released at the time of payment on the guarantee. They argue that this has been established as a matter of law pointing to the documents submitted in support of their motion. As indicated, supra, the documents submitted are inconclusive. Indeed, petitioners have not presented any evidence which would conclusively establish that Smith's right of subrogation was released at the time payments under the guarantee were made. Moreover, a determination under section 165(c)(2) requires that the loss be sustained in a transaction entered into for profit. Smith's own statements, made under oath, in his affidavit in support of petitioners' motion raise a question of material fact as to the existence of a profit motive at the time the guarantee was entered into. Specifically speaking of his advancements and the loan guarantee, Smith avers: * * * As a business proposition I should have then walked away from Fun and *88 Fitness, Inc.; but I owed a high fiduciary duty to my bank and to its customers. In truth and in fact I was no longer a free agent to handle non-banking business just as it might suit me. * * * [Smith Affidavit, page 3.] In that same affidavit Smith further states with reference to the time the guarantee was made: * * * Despite these problems, the prospects for Fun and Fitness still seemed promising; its net profits for its first three fiscal years as reported on its tax returns totalled $170,583.00. * * * [Smith Affidavit, page 4.] The above-quoted language leaves absolutely no doubt that there is a genuine issue of material fact as to whether Smith had a profit motive. On this record petitioners have made no prima facie showing that there is no genuine issue as to a material fact, consequently, we must and do deny their motion. Finally, we think it necessary and appropriate to comment on respondent's affidavit. As drafted and sworn to it has no probative value whatsoever. The Supreme Court in Adickes v. Kress & Co.,398 U.S. 144, 161 (1970), expressed and adopted the views of one commentator as follows: "It has always been perilous for the opposing party neither to proffer any *89 countering evidentiary materials nor file a 56(f) affidavit.And the peril rightly continues [after the amendment to Rule 56(e)]. [13] Yet the party moving for summary judgment has the burden to show that he is entitled to judgment under established principles; and if he does not discharge that burden then he is not entitled to judgment. No defense to an insufficient showing is required." 6 J. Moore, Federal Practice par. 56.22[2], pp. 2824-2825 (2d ed. 1966). This Court has refused on many occasions to grant summary judgment motions where intent is a material issue in the case.See, for example, Oakland Hills Country Club v. Commissioner,supra at 40, and Hoeme v. Commissioner,supra at 20. We believe that this result is mandated by Rules 121(d) and (e) when a party opposing the motion files affidavits asserting specific facts relating to *90 intent or where said party, in his affidavits, asserts that his only legally available method of controverting the facts set forth in the affidavits of the moving party is through cross-examination of such affiants or the testimomy of third parties from whom affidavits cannot be secured. Here, respondent, in his affidavit, did not utilize the procedures provided in Rules 121(d) and (e). [14] *91 This could have been fatal had we found that petitioners had established a prima facie case. In accord with our views expressed herein An appropriate order will be issued.
Footnotes
1. This case was assigned pursuant to secs. 7456(c) and (d), Internal Revenue Code of 1954↩, as amended and Delegation Order No. 8 of this Court, 81 T.C. VII (July 1983). All rule references herein are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. The parties were heard in oral argument at Washington, D.C. on October 26, 1983.
2. Petitioners, in their timely filed petition, do not allege error with respect to adjustments (C) through (F). Therefore, they are deemed conceded. See Rule 34(b)(4).↩
3. Petitioners maintain that the combined ownership of T. Eugene Smith (Smith) and James H. Berkey (Berkey), also originally a 25 percent shareholder, increased to 90 percent as a result of increased cash investment. ↩
4. It appears from the arguments at the hearing that Morton Gumpel is the same individual whom petitioners allege wrongfully diverted FFI funds to his own personal use.↩
5. All section references are to the Internal Revenue Code of 1954, as amended.↩
6. Although handwritten and revised in significant part, this appears to be an operative agreement between the signatories as each page has been dated and initialled at the bottom and the last page has been signed. The signatories are counsel for Norman Pessin and Morton Gumpel, who purchased the FFI stock of Smith and Berkey, and FFI, and Smith and Berkey, respectively. 7. Smith's and Berkey's affidavits also refer to a Memorandum of Agreement in which the terms of the closing were recited (Smith Affidavit, page 6; Berkey Affidavit, page 4). However, this document was not submitted with the motion for summary judgment. ↩
8. Closing, in fact, did not occur until after December 20, 1978, according to Smith's and Berkey's Affidavits (Smith Affidavit, page 6; Berkey Affidavit, page 4).↩
9. We observe that respondent submitted his objection to the Court on October 19, 1983, which date was not 10 days prior to the date set for hearing.See Rule 121(b)↩. However, we filed that Objection on October 19, 1983, which means "leave to file out of time" was implicitly granted. 10. Respondent has apparently ignored our discussion in Jarvis v. Commissioner,78 T.C. 646 (1982), where this Court, while construing one paragraph of respondent's affidavit based on belief, stated: As we have previously noted, affidavits must be based on personal knowledge and not belief. However, this statement does not invalidate the entire affidavit, but that statement will not be considered. * * * [78 T.C. at 652.] Therefore, paragraph 4 of the affidavit has not been considered for purposes of determining the sufficiency of respondent's objection to the motion for summary judgment.↩
11. We note that the papers supporting petitioners' affidavits are not sworn or certified copies as required under Rule 121(d)↩. 12. The parties agree that the law of the State of Virginia respecting subrogation is applicable to the guarantee herein under consideration.↩
13. Rules 121(d) and (e) are derived from rules 56(e) and (f) of Federal Rules of Civil Procedure. Hence, with respect to questions concerning the interpretation of Rule 121, the history of Rule 56 and the authorities interpretating such rule may be considered by the Tax Court. See Rule 1(a) and Espinoza v. Commissioner,78 T.C. 412, 415-416↩ (1982).
14. Summary judgment cannot be granted on the basis of statements of fact in the moving party's brief even though they are uncontroverted by an opponent. Nor can the motion be defeated by factual assertions in a brief of the party opposing it, inasmuch as documents of this character are self-serving and are not probative evidence of the existence or nonexistence of any factual issues. C. Wright, A. Miller & M. Kane, 10A Federal Practice and procedure: Civil, sec. 2723 (2d ed. 1983). The same rationale would apply to statements of fact contained in a motion or objection. We believe that the purpose of a motion, objection or brief is to highlight the areas where the party seeks to establish that there is or is not a genuine issue of material fact. A motion, objection or brief filed in a summary judgment action is not intended to present specific facts from which the Court may grant or deny a motion for summary judgment.